**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Samuel J. Bourne, Individually</u>
<u>and as Trustee of Bedrock</u>
<u>Realty Trust</u>

     v.                       Case No.  09-cv-00270-PB
                                     Opinion No. 2011 DNH 029

<u>Stewart Title Guaranty Company</u>
<u>And Laconia Savings Bank</u>

<u>**MEMORANDUM AND ORDER**</u>

Samuel Bourne has sued Laconia Savings Bank ("Laconia") and
Stewart Title Guaranty Company of Northern New England, Inc.
("Stewart Title") in his individual capacity and as a trustee of
the Bedrock Realty Trust ("Bedrock").  The case concerns a
Madison, New Hampshire vacation property that Bedrock purchased
in 2002.  Bourne obtained title insurance through Stewart Title
and refinanced the property multiple times with Laconia.
Although Bourne asserts a number of different claims against
each defendant, his core claims against Laconia are that it
fraudulently induced him to borrow more than the property is
worth and misrepresented essential loan terms.  His principal
argument against Stewart Title is that it failed to defend his
title as it was obligated to do under his title insurance

policy.  Laconia has filed a motion for judgment on the
pleadings pursuant to Fed. R. Civ. P. 12(c) and Stewart Title
has filed a motion to dismiss for failure to state a claim
pursuant to Fed. R. Civ. P. 12(b)(6).  In this Memorandum and
Order, I grant Laconia's motion for judgment on the pleadings in
its entirety and grant Stewart Title's motion to dismiss in part
and deny it in part.

## I.  BACKGROUND

Bedrock purchased a vacation home in Madison, New Hampshire
for $92,000 in September 2002.  Bourne obtained a mortgage loan
from Laconia, and the loan was secured by a $50,000 mortgage.
Laconia had the property appraised before agreeing to the
mortgage, valuing the property at $94,350.  Over the next
several years Bourne refinanced the loan twice through Laconia,
once in January 2005 and a second time in October 2005.  The
October 2005 refinancing left Bourne with a $175,000 loan
secured by the mortgage against the property.  Laconia
commissioned appraisals for each refinancing and asked Bourne to
wait for the appraisals before determining how much to borrow.
The appraisal for the January 2005 refinancing valued the
property at $155,000, and the October 2005 appraisal valued the

property at $223,000.  In August 2008, the town of Madison performed a tax assessment that valued the property at approximately $76,000.

Bourne was required to purchase a lender's title insurance policy for the Madison property from Stewart Title pursuant to the original mortgage agreement with Laconia.  Bourne paid for two policies, one for himself (the "owner policy") and one for Laconia (the "lender policy").  Bourne is listed as an insured party in his capacity as a trustee of Bedrock on the owner policy.  "Covered risks" under the policy include, among others, risks that arise when "[s]omeone else has an easement on the land" and "[s]omeone else has a right to limit Your use of the land."  Pl's Ex. H, Doc. No. 67-8, 3-4.  The lender policy contains additional assurances regarding easements on the property but it lists the insured party as "Laconia Savings Bank, its successors, and/or assigns."  Pl's Ex. G, Doc. No. 67-7, 10.  Both policies promise to defend the insured party from any "covered risk" that is not excepted or excluded from coverage.

After Bedrock purchased the property, a dispute arose between Bourne and the town of Madison regarding the scope of an easement across Bourne's property (the "Kelsey Easement").  Town

officials claimed that the Kelsey Easement granted it the right to allow the public to use snowmobiles and recreational vehicles on a portion of the property.  Bourne denied those claims.  The disputes led to litigation between Bourne and the town.  In 2007, the Carroll County Superior Court ruled in favor of Bourne.  That decision was affirmed by the New Hampshire Supreme Court in 2009.

In a separate dispute, Bourne also claimed that town officials interfered with maintenance of access to his property, prevented installation of electric service, and improperly denied lot subdivision and building permit requests.  Those issues were litigated in a federal court action which resulted in dismissal of all of Bourne's claims.  Finally, one of Bourne's neighbors also made an adverse claim to the property. That claim was settled out of court, with the neighbor agreeing to pay Bourne $8,450.  In 2008, yet another dispute arose over whether the town had properly accepted the Kelsey Easement when it was first granted.  It is unclear from the complaint whether this disagreement has been resolved.

Each time a legal dispute regarding his property arose, Bourne gave notice to Stewart Title of the claims and requested that Stewart defend against the claims.  In each instance,

4

Stewart Title refused to defend citing various exceptions and exclusions in the owner policy that prevented the disputes from qualifying as covered risks.  Partly as a result of legal costs incurred in resolving the title disputes, Bourne defaulted on his mortgage and Laconia has notified Bourne of its intention to institute foreclosure proceedings.  Acting pro se, Bourne filed this action in August 2009 alleging various statutory and common law violations.  Bourne amended his complaint in December 2009. In February 2010, I held a hearing regarding the sufficiency of Bourne's pleadings.  After that hearing I granted Bourne leave to amend his complaint a third and final time in an attempt to clarify the pleadings.

In response to Bourne's third amended complaint, Laconia filed an answer and a motion for judgment on the pleadings seeking dismissal of all the claims that apply to it.  Stewart Title later filed a motion to dismiss for failure to state a claim.[1]

---

[1]   Bourne argues that Stewart Title is in default for failing to file a timely answer.  Serving a motion to dismiss, however, extends the deadline to file an answer until 14 days after the motion is resolved.  <u>See</u> Fed. R. Civ. P. 12(a)(4)(A).  As I have not yet ruled on Stewart Title's motion to dismiss, the deadline to file an answer has not yet passed and Stewart Title is not in default.

## II.   <u>STANDARD OF REVIEW</u>

The Supreme Court's decisions in <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), and <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), establish the appropriate structure for analyzing the sufficiency of pleadings.  Those cases describe a "two-pronged approach" that first identifies "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Iqbal</u>, 129 S. Ct. at 1950.  The second step then requires courts to look at the remaining well-pleaded factual allegations, assume their veracity, and "determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u>

A claim is facially plausible when it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks me for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> at 1949 (citations omitted).  In deciding a motion to dismiss, I must accept all well-pleaded factual allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor.

Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).

The Federal Rules of Civil Procedure also require that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Claims subject to this requirement must identify the "time, place, and content of the misrepresentation with specificity." S.E.C. v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (quoting Greebel v. FTP Software, Inc., 194 F.3d 185, 193 (1st Cir. 1999)).  Although "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), allegations of intent must satisfy the above-described plausibility standard to survive a motion to dismiss. Iqbal, 129 S. Ct. at 1954.  The heightened pleading requirements apply not just to allegations of fraud, but also to "associated claims where the core allegations effectively charge fraud." N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009).

"The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as that for deciding a Rule 12(b)(6) motion." Pasdon v. City of Peabody, 417 F.3d 225, 226 (1st Cir. 2005).  The court again views the

facts contained in the pleadings in the light most favorable to the nonmovant and draws all reasonable inferences in his favor. Zipperer v. Raytheon Co., 493 F.3d 50, 53 (1st Cir. 2007), cert. denied, 128 S. Ct. 1248 (2008).  Judgment on the pleadings is proper "only if the uncontested and properly contested facts conclusively establish the movant's entitlement to a favorable judgment."  Id. (quoting Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006)).

### III.  ANALYSIS

Bourne's third amended complaint lists sixteen claims, some that apply only to Laconia and some that apply to both defendants.  Of those claims, several have been withdrawn by Bourne and I will not consider them in this order.[2]  I will address the remaining claims against Laconia and Stewart Title separately because they are based on largely different sets of facts.

### A.  Claims Against Laconia

Bourne argues in Count 8 of his complaint that Laconia fraudulently induced him to refinance the Madison property in

---

[2] Bourne has withdrawn counts 3, 4, 5, 7, 11, and 14.  There is no count 10 in the complaint.  For ease of reference I will use the original numbers for each count before they were withdrawn, as Bourne has done in his amended complaint.

two ways.  First, he alleges Laconia caused appraisal reports to be prepared in connection with the refinancings that fraudulently overstated the true value of the property. Second, he alleges that Laconia intentionally misstated unspecified loan terms.  Bourne repeats these allegations in Count 2, his good faith and fair dealing claim; Count 9, his unconscionability claim; Counts 6 and 13, his consumer protection act claims; Count 15, his predatory pricing claim; and Count 16, his unjust enrichment claim.  Bourne alternatively asserts in Count 12 that the false appraisals and misstatements also support a negligent misrepresentation claim against Laconia.  Finally, Bourne asserts a series of contract-related claims.  I address each category of claims in turn.

### 1.  Fraud-related claims

#### a.  Appraisals

Bourne claims that Laconia fraudulently misrepresented the value of the Madison property when it appraised his property in 2005.  Bourne has not pleaded sufficient facts showing that the appraisal values were incorrect, and, in any event, he has failed to properly plead that Laconia acted with an intention to defraud.

The vast majority of Bourne's allegations surrounding Laconia's claimed misrepresentations are exactly the kind of bare "legal conclusions" that the Supreme Court has declared insufficient for pleading purposes.  See Twombly, 550 U.S. at 555; Iqbal, 129 S. Ct. at 1950.  In Iqbal, for example, the plaintiff's allegations of unconstitutional discrimination were deemed insufficient where he pleaded that the defendants "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions.  Iqbal, 129 S. Ct. at 1951.  The Court noted that these allegations were "nothing more than a 'formulaic recitation of the elements'" and as such were not entitled to be assumed true.  Id. (quoting Twombly, 550 U.S. at 555).

Here, as in Iqbal, Bourne's allegations of wrongdoing surrounding Laconia's appraisal of his property are almost all bare legal conclusions.  Bourne alleges, for example, that Laconia "unconscionably induced Plaintiff . . . into borrowing additional funds under fraudulent appraisals."  See Pl's Verified Pet. For Prelim. Inj. And Equitable Relief Under Common Law ("Am. Compl."), Doc. No. 67., ¶ 10.  Allegations such as these amount to nothing more than a "formulaic recitation" of

legal conclusions, and are not entitled to an assumption of truth.  See Iqbal, 129 S. Ct. at 1951.

Turning to the second prong of the analysis laid out in Iqbal and Twombly, the only non-conclusory facts Bourne alleges are that the property was appraised at $94,350 in 2002, $155,000 in January of 2005, and $223,000 in October of 2005.  Bourne also notes that an August, 2008 tax assessment valued the property at approximately $76,000.  While the appraisals he relies on vary significantly, such variations are not enough on their own to establish that Laconia overstated the value of the property.  See In re Pub. Serv. Co. of N.H., 43 F.3d 763, 767 (1st Cir. 1995) (noting that where a complaint merely asserted inconsistencies between a company's financial projections, it did "not even begin to show that they were wrong, let alone fraudulent").

Even if Bourne had sufficiently pleaded that Laconia misrepresented appraisal values, he cannot establish a viable fraud claim without properly alleging that Laconia acted with fraudulent intent.  See Patch v. Arsenault, 653 A.2d 1079, 1083-84 (N.H. 1995).  Mere "general averments" of scienter are not enough, and the plaintiff must offer some factual basis for inferring that a defendant knew or should have known that

statements were inaccurate.  See Serabian v. Amoskeag Bank Shares, Inc., 24 F.3d 357, 361 (1st Cir. 1994).

Bourne offers no facts to support his conclusion that Laconia acted with fraudulent intent.  Accordingly, Laconia is entitled to judgment on the pleadings with respect to all of Bourne's fraud-related claims that Laconia misstated the value of his property.

### b.   **Mortgage Terms**

Bourne also claims that Laconia fraudulently misrepresented unspecified lending practices and various mortgage terms such as the applicable interest rate.  He provides no factual allegations to support this claim, however, relying entirely on legal conclusions couched as factual allegations.  For example, he claims that Laconia "misrepresented . . . that it engaged in prudent and commercially responsible lending practices" and "charged excessive interest fees up front without notice."  Am. Compl., Doc. No. 67, ¶ 57.  Once again, the abundance of conclusory terms such as "prudent," "commercially responsible," and "excessive" without any supporting facts explaining the basis of those claims prevents me from being able to credit the bulk of Bourne's allegations for the purposes of this motion. Iqbal, 129 S. Ct. at 1949.

Bourne's remaining non-conclusory allegations regarding Laconia's lending practices are also insufficient.  Bourne does not describe the interest rates he claims were excessive and he does not identify the lending practices that Laconia misstated. He also fails to provide any facts showing that Laconia acted with the required scienter.  See Patch, 653 A.2d at 1083-84. These allegations, like Bourne's claims regarding the appraisals, are certainly insufficient under the heightened pleading standard that applies to fraud claims.  Because Bourne has failed to properly plead that Laconia fraudulently misstated its lending practices or any essential loan terms, Laconia is entitled to judgment on the pleadings with respect to these claims.

### 2.  Negligent Misrepresentation Claim

Bourne attempts to repackage his fraud-related claims as a negligent misrepresentation claim.  He also asserts that Laconia is liable because it negligently failed to disclose that it had purchased a lender's title insurance policy from Stewart Title.

Negligent misrepresentation, like fraudulent misrepresentation, must be pleaded with particularity.  N. Am. Catholic Educ. Programming Found., Inc., 567 F.3d at 15.  Thus, to the extent that Bourne premises his negligent

misrepresentation claim on the same conduct that he cited in
support of his fraud-related claims, his negligent
misrepresentation claim fails for the same reasons that his
fraud-related claims fail.

To the extent that Bourne faults Laconia for its alleged
failure to disclose the fact that it had purchased a title
insurance policy from Stewart Title, his claim is deficient both
because he has failed to explain why Laconia had a duty to
disclose this information and because, in any event, he has
failed to explain how he was damaged by Laconia's failure to
disclose its purchase of the title policy.  Accordingly, Laconia
is entitled to judgment on the pleadings with respect to
Bourne's negligence claim.

### 3. Contract-Related Claims

#### a. Count 2: Breach of Contract

In New Hampshire, "a breach of contract occurs when there
is a failure without legal excuse to perform any promise which
forms the whole or part of a contract." Bronstein v. GZA
GeoEnvironmental, Inc., 665 A.2d 369, 371 (N.H. 1995) (internal
quotation marks omitted).  The only contracts that existed
between Bourne and Laconia are the loan agreements.  Bourne does
not cite any provisions in the loan agreements that Laconia

allegedly breached.  Therefore, he provides no factual support for his breach of contract claim and the claim must be dismissed.

### b.  Count 9: Unconscionability

In addition to his breach of contract claim, Bourne argues that the loan agreements are unenforceable because they are unconscionable.  When seeking to void a contract for unconscionability, a plaintiff must show both that he had an "absence of meaningful choice" when entering the contract, and that the contract terms are "unreasonably favorable" to the other party.  Pittsfield Weaving Co. v. Grove Textiles, Inc., 430 A.2d 638, 639 (N.H. 1981).

Bourne alleges that the mortgage agreement is unconscionable because: (1) the bank loaned him more than his property was worth; (2) the bank used an incorrect calculation for Bourne's income; (3) title issues were being litigated when the Bank allowed Bourne to refinance and (4) the bank restricted Bourne's ability to collect rental income and obtain homestead protection.  Am. Compl., Doc. No. 67, ¶ 66.  I have already explained that Bourne has failed to plead a viable claim that Laconia is liable because it lent him more than his property was worth.  The second and third arguments fail because Bourne does

15

not allege that he was prevented from having any meaningful choice as to whether to enter the contract.  As for the fourth argument, while it does allege that Laconia restricted his rights with respect to the property, Bourne again fails to explain how the bank forced him to enter the contract.  Because the complaint fails to allege sufficient facts to allow an inference that Bourne lacked meaningful choice, a required element of unconscionability, Laconia is entitled to judgment on the pleadings with respect to Bourne's unconscionability claim.

### c.   Count 16: Unjust Enrichment

The final claim Bourne alleges against Laconia is for unjust enrichment and quantum meruit.[3]  "Unjust enrichment is an equitable remedy, found where an individual receives a benefit which would be unconscionable for him to retain." Clapp v. Goffstown School Dist., 977 A.2d 1021, 1024-25 (N.H. 2009) (internal quotation marks omitted).  One limitation on the doctrine is that "unjust enrichment shall not supplant the terms of an agreement." Id. at 1025.  The court rejected an unjust

---

[3] New Hampshire law does not appear to distinguish between unjust enrichment and quantum meruit theories.  See, e.g., Nat'l Emp't Serv. Corp. v. Olsten Staffing Serv., Inc., 761 A.2d 401, 406 (N.H. 2000) (reversing judgment on plaintiff's "quantum meruit" claim, stating: "[a] plaintiff is entitled to restitution for unjust enrichment if the defendant received a benefit and it would be unconscionable for the defendant to retain that benefit.")

enrichment claim in Clapp based on this "general rule," noting
that a valid and enforceable contract precluded consideration of
an unjust enrichment claim where there was a contract that
controlled the parties' relationship.  Id. at 1025-26.  Here, I
have already concluded that Bourne has failed to properly allege
that the mortgage agreement between Bourne and Laconia was
unconscionable, that it was breached by Laconia, or that it was
otherwise unenforceable.  Because Bourne may not plead unjust
enrichment to supplant the terms of his agreement with Laconia,
his unjust enrichment and quantum meruit claim necessarily
fails.[4]

**B.   Claims Against Stewart Title**

Bourne asserts a variety of claims against Stewart Title
that may be grouped into two categories: (1) breach of contract
claims based on insurance policies issued by Stewart Title, and
(2) alternative legal theories that derive from the breach of
contract claims.  I address each category of claims in turn.

---

[4]  Bourne also seeks an injunction preventing Laconia from
instituting foreclosure proceedings against his property.
Bourne's request for an injunction is based on the theory that
he has a viable claim against Laconia.  Because I have dismissed
all of Bourne's claims against Laconia, he no longer has a
viable theory to prevent Laconia from foreclosing.  Therefore,
Bourne's request for an injunction is denied.

1. **Contract Claims**

    a.  **Count 2: Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing**

Bourne's claims against Stewart Title arise out of a different set of facts than his claims against Laconia. Essentially, Bourne claims that Stewart Title breached the lender and the owner title insurance policies when it refused to defend the Madison property in the various title disputes.

As a threshold matter, Bourne's claims arising out of the lender policy fail because he is not an insured party under the policy.  Absent any evidence that a person was intended to be a third-party beneficiary of a contract, that person may only recover if he is one of the parties to the contract that the defendant allegedly breached.  See Plourde Sand & Gravel v. JGI E., Inc., 917 A.2d 1250, 1255 (N.H. 2007).  A third-party beneficiary relationship exists only where "the contract is so expressed as to give the promisor reason to know that a benefit to a third party is contemplated by the promise as one of the motivating causes of his making the contract."  Id. (quoting Spherex, Inc. v. Alexander Grant & Co., 451 A.2d 1308, 1311 (N.H. 1982)); see also Audler v. CBC Innovis, Inc., 519 F.3d 239, 255 (5th Cir. 2008) (holding that the plaintiff could not recover on a flood insurance contract between an insurance

18

company and his lender where he "ha[d] not presented any evidence that [the bank and insurance company] intended him as a beneficiary of the contract").

Bourne does not allege that he was a party to the lender policy.  Nor does he sufficiently allege that he was an intended beneficiary of the policy.  The policy which Bourne attached to his amended complaint lists "Laconia Savings Bank, its successors, and/or assigns" as the insured parties, and makes no mention of Bourne.  Pl's Ex. G, Doc. No. 67-7.  Bourne does not allege that any promises were made to him that he would benefit from the lender policy.  While Bourne does allege that he was required to pay for the policy, that allegation alone does not establish that he was an intended beneficiary, particularly in light of the omission of his name as an insured party.  Accordingly, Bourne's claims under the lender policy must be dismissed.[5]

---

[5] Because Bourne has failed to plead sufficient facts to show that he received any protection under the lender policy or that it was represented to him that he would receive such protection, all other claims that stem from Stewart Title's alleged duties under that policy also fail.  Thus I need not discuss separately Bourne's allegations that Stewart Title made fraudulent representations (count eight), acted unconscionably (count nine), was negligent (count twelve), or made use of any unfair or deceptive practices (counts six and thirteen) with regards to the lender policy.

As for the owner policy, there is no question that Bourne
is an insured party under that policy.  Bourne identifies four
matters that support his claim for coverage under the owner
policy:  (1) litigation with the town of Madison regarding the
scope of the Kelsey easement and whether a class VI road existed
or could be laid out over the property, (2) litigation over
whether town officials interfered with Bourne's property
maintenance and building requests, (3) an adverse claim by one
of Bourne's neighbors, and (4) litigation over whether the town
properly accepted the Kelsey easement.

The owner policy covers the risk that "[s]omeone else has
an easement on the land" and the risk that "[s]omeone else has a
right to limit your use of the land."  Am. Compl., Doc. No. 67,
¶ 30 (emphasis omitted).  Bourne's first, second, and fourth
disputes all relate either to the town's claimed easement across
the Madison property or a claimed right by the town to limit
Bourne's use of the property.  Bourne's factual allegations
establish a plausible claim that the owner policy required
Stewart Title to defend against these disputes, and that its
failure to do so constituted a breach of its obligation under
the policy.  Bourne does not provide any facts as to the nature
of the third dispute, however, which he describes simply as an

"adverse claim" from a neighbor.  Bourne's single allegation regarding that dispute is so vague that it fails to set out facts that could plausibly demonstrate that it falls under the policy.  Iqbal, 129 S. Ct. at 1950.  As a result, that particular claim must be dismissed.

As for the three remaining coverage claims, Stewart Title responds by arguing that various exceptions under the policy negated any obligation it may have had to provide coverage.  "The insurer asserting an exclusion of coverage . . . bears the burden of proving that the exclusion applies."  Progressive N. Ins. Co. v. Concord Gen. Mut. Ins. Co., 864 A.2d 368, 372 (N.H. 2005).  Stewart Title does not point to — and the complaint does not contain — factual information that would allow Stewart Title to carry this burden.  For example, Stewart Title argues that coverage regarding the Kelsey Easement is excluded by "Special Exception 3."  That exception eliminates from coverage "[r]ights, rights of way and easements in instruments recorded in the Carroll County Registry of Deeds in Book 734, Page 078."  Pl's Ex. H, Doc. No. 67-8, 10.  Stewart Title does not state whether the Kelsey Easement was in fact recorded, however, and there is no information in Bourne's complaint that could either confirm or deny such an allegation.

21

The same problem exists for each exception Stewart Title points to as a justification for denying coverage.  At no point does Stewart Title explain how the facts alleged in this case require the application of any policy exceptions.  Instead, it relies on blanket assertions devoid of any factual support. Bourne has adequately pleaded a plausible claim for breach of contract, and Stewart Title has failed at this stage to meet its burden of establishing that policy exclusions negated its contractual obligations under the owner policy.  Therefore, Bourne may proceed with his breach of contract claim under the owner policy with respect to all of the disputes surrounding the Madison property except the adverse claim made by his neighbor.

### b.  Count 9: Unconscionability

Anticipating Stewart Title's argument that it had no obligations under the policy because of various exclusions and exceptions, Bourne argues that those exceptions and exclusions are unconscionable because they are "ambiguous" and "confusing." Am. Compl., Doc. No. 67, ¶ 67.  He seeks to void those provisions of the title insurance contract, leaving the remainder of the policy intact and enforceable.

Bourne fails to plead sufficient facts to support a claim that the exclusion and exception provisions are unconscionable.

22

As was discussed earlier, he must allege facts showing that there was an "absence of meaningful choice" when the contract was formed, and that the terms in dispute are "unreasonably favorable." Pittsfield Weaving Co., 430 A.2d at 639. Exclusions are included in most insurance contracts and, even when they are ambiguous, the proper remedy is to construe the ambiguity in favor of the insured, not to declare them unconscionable.  See Progressive N. Ins. Co., 864 A.2d at 372 ("Insurers are free to contractually limit the extent of their liability through use of a policy exclusion"); Hoepp v. State Farm Ins. Co., 697 A.2d 943, 945 (N.H. 1997) (noting the rule that requires "interpreting the language in favor of the insured. . . when ambiguities are found in an exclusionary clause").

Here, Bourne notes that the exceptions and exclusions repeatedly reference each other and argues that they are ambiguous and confusing.  Even if the provisions were ambiguous, however, which I need not decide at this time, that would simply mean that the provisions should be construed against Stewart Title and would not justify voiding the provisions as unconscionable.  Moreover, nowhere in his complaint does Bourne allege that he had no choice as to whether to enter the contract

under those terms, or even that the terms are unreasonably favorable to Stewart Title.  Because Bourne pleads facts alleging that, at most, the terms of the contract were confusing and ambiguous, his claim that the policy terms are unconscionable is dismissed.

### 2.  Remaining Claims

#### a.  Count 8: Fraudulent Representation

Bourne alleges that Stewart Title fraudulently represented that it was not required to cover the various title disputes concerning the Madison property.  As I discussed with regard to the fraud claims against Laconia, a fraud claim is subject to a heightened pleading standard, Fed. R. Civ. Pro. 9(b), and must allege that the representation was made "with knowledge of its falsity or with conscious indifference to its truth," Patch, 653 A.2d at 1083.  Here, Bourne's only references to scienter in the amended complaint come in the form of conclusory statements, which are not entitled to an assumption of truth. Iqbal, 129 S. Ct. at 1951.  For example, Bourne states that Stewart Title "fraudulently induced and or fraudulently persuaded Plaintiff into believing that the policy did not allow coverage," that it "made fraudulent representations that it knew to be false," and

that it "intended that the Plaintiff act upon the fraudulent representations."  Am. Compl., Doc. No. 67, ¶ 61.  Because these allegations are simply formulaic recitations of the elements of fraud, they are insufficient to plead a viable fraud claim.

### b.  Count 12: Negligence

Bourne repackages his allegations as a negligence claim, claiming Stewart Title negligently failed to defend his property.  Under New Hampshire law, a rule known as the "economic-loss doctrine" prevents a contracting party from seeking tort damages "for purely economic or commercial losses associated with the contract relationship."  See Plourde Sand & Gravel Co., 917 A.2d at 1253.  This rule recognizes that imposing tort duties onto existing contractual obligations "would disrupt the contractual relationships between and among the various parties."  Id. at 1257.

Here, all of the duties that Bourne alleges Stewart Title negligently breached stem from a failure to defend against adverse claims to the property, and thus are associated with the contract relationship between Bourne and Stewart Title.  The damages he seeks are also squarely within the economic-loss doctrine.  See Id. at 1253.  Because Bourne seeks economic

damages that are associated with the contractual relationship he
had with Stewart Title, his negligence claim is precluded by the
economic loss-doctrine and must be dismissed.

### c. Count 13: Violation of RSA 358-A

Bourne alleges that the same conduct underlying his other
claims against Stewart Title constituted a violation of New
Hampshire's consumer protection statute.  The New Hampshire
Supreme Court has determined, however, that "the insurance trade
is exempt from the Consumer Protection Act." Bell v. Liberty
Mut. Ins. Co., 776 A.2d 1260, 1263 (N.H. 2001).  In light of
this rule, Bourne's consumer protection claim is dismissed
because the act does not apply to Stewart Title.[6]

---

[6]  In Count 6 Bourne also alleges that Stewart Title violated the
Massachusetts Consumer Protection statute, again basing this
claim on the allegations that underlie his breach of contract
arguments.  Recovery under Ch. 93A is available only when the
misconduct occurred "primarily and substantially" in
Massachusetts.  Mass. Gen. Laws Ann. ch. 93A § 11.  As was the
case with Bourne's claims against Laconia, the "center of
gravity" of Bourne's claims against Stewart Title is in New
Hampshire.  See Kuwaiti Danish Computer Co. v. Digital Equip.
Corp., 781 N.E.2d 787, 799 (Mass. 2003).  Almost all of the
factual circumstances surrounding Stewart Title's allegedly
wrongful conduct took place in New Hampshire, including the
property disputes which Bourne alleges should have been covered
by the title insurance.  Because the available facts establish
the inevitable success of Stewart Title's defense against
Bourne's Ch. 93A claim, that count is dismissed.

**d.** **Count 15: Predatory Lending and Unfair and Deceptive Trade Practices**

Bourne's predatory lending and unfair and deceptive trade practices claim against Stewart Title fails to "give the defendant fair notice of what the . . . claim is." Twombly, 550 U.S. at 555. Like his complaint against Laconia, Bourne bases his claim broadly in the Federal Trade Commission Act. While he does attempt to allege that it was Stewart Title's "failure to warn of a defective or dangerous condition" that violated the act, that standard applies to product liability actions and has no bearing on Stewart Title's conduct in this matter. See Maillet v. ATF-Davidson Co., Inc., 552 N.E.2d 95, 99-100 (Mass. 1990). Because Bourne fails to allege a viable cause of action related to predatory lending and deceptive trade practices, this count is dismissed.

**IV.** **CONCLUSION**

For the reasons stated above, I conclude that Bourne has inadequately pleaded each of the claims in his complaint, with the exception of his breach of contract claim (Count 2) against Stewart Title. I grant Laconia's motion for judgment on the pleadings (Doc. No. 77) in its entirety and grant Stewart Title's motion to dismiss (Doc. No. 69) in part. The only

remaining claim in this case is Bourne's breach of contract claim against Stewart Title.

SO ORDERED.


                                        /s/Paul Barbadoro
                                        Paul Barbadoro
                                        United States District Judge

February 16, 2011

cc:  Samuel Bourne, pro se
     Edmond J. Ford, Esq.
     R. Matthew Cairns, Esq.