**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Samuel J. Bourne</u>

    **v.**                                        Case No. 09-cv-270-PB
                                                Opinion No. 2011 DNH 204
<u>Stewart Title Guarantee Company</u>

<u>MEMORANDUM AND ORDER</u>

Samuel J. Bourne brings suit against Stewart Title
Guarantee Company ("Stewart Title"), alleging that Stewart Title
breached its duty to defend his title to a Madison, New
Hampshire vacation property.  Bourne and Stewart Title have
filed cross-motions for summary judgment.  For the reasons set
forth below, I grant Stewart Title's motion.

## I.  <u>BACKGROUND</u>

In September 2002, Bourne paid $92,500 to acquire a fifty-
acre parcel of land with a small cabin in Madison, New
Hampshire.  He financed the purchase with retirement funds and a
mortgage loan from Laconia Savings Bank ("Bank").  Pursuant to
the mortgage agreement, Bourne purchased two title insurance
policies from Stewart Title, one for himself (the "owner
policy") and one for the Bank (the "lender policy").  On the

owner policy, Bourne is listed as an insured party in his capacity as a trustee of Bedrock Realty Trust.  The policy promises to defend the insured parties from any "covered risk" that is not excepted or excluded from coverage.

Shortly after Bourne acquired the property, he became involved in a series of disputes with the Town of Madison ("Town") regarding his property.  One of the disputes concerned the scope of an easement across the property that prior owners had deeded to the Town in 1979 (the "Kelsey Easement").  In November 2003, Bourne sued the Town to prevent the use of the Kelsey Easement as a snowmobile trail, contending that the Easement was limited to foot traffic (the "2003 Easement litigation").  That same year, Bourne filed two lawsuits against the Town regarding Solomon Harmon Road ("Road"), an unpaved roadway that traversed Bourne's property (collectively, the "2003 Road litigation").  In the first action, he sought to relocate the Road from the center to the edge of his property. In the second action, he challenged the Town's claim that the Road was a Class VI public highway by prescription.[1]  When the

---

[1] Class VI highways are defined as "all other existing public ways" that do not come within definitions of Class I-V highways. See N.H. Rev. Stat. Ann. § 229:5, VII.  The class includes "all

Town subsequently attempted to lay out the Road as a Class VI highway,[2] Bourne filed another lawsuit in February 2005 to challenge the Town's decision (the "2005 Road litigation").

All four suits were consolidated and tried in the Carroll County Superior Court.  In August 2008, the court held that (1) the Kelsey Easement did not cover use by snowmobiles or other motorized vehicles; (2) the court was without authority to change the location of the Kelsey Easement from the center to the edge of the property; (3) Solomon Harmon Road was not a Class VI highway by prescription; and (4) the Town's attempt to lay out the Road as a Class VI public highway failed to satisfy the legal requirements necessary to support such a process.

---

highways discontinued as open highways and made subject to gates and bars . . . and all highways which have not been maintained and repaired by the town in suitable condition for travel thereon for 5 successive years or more . . . ."  Id.  Class VI highways are "full public highways that the public has the right to pass over . . . even though such highways are not 'approved public street[s]' for zoning purposes."  Glick v. Ossipee, 130 N.H. 643, 646 (1988) (internal citations omitted).  A road may be established by prescription if "the general public used the roadway continually without interruption for a period of twenty years prior to 1968, under a claim of right without the owner's permission" and the public use of the road was "adverse."  Gill v. Gerrato, 156 N.H. 595, 596 (2007) (quoting Mahoney v. Town of Canterbury, 150 N.H. 148, 150 (2003)).

[2] The New Hampshire legislature has given the selectmen of a town the power to "lay out" roads in certain circumstances.  See, e.g., N.H. Rev. Stat. Ann. § 231:8.

D.'s Ex. CC, Doc. No. 146-31.  The court also denied Bourne's request for attorneys' fees.  Id. at 17-18.  In 2009, the New Hampshire Supreme Court affirmed the lower court's decision in all material respects.  Bedrock Realty Trust v. Town of Madison, No. 2008-0550 (N.H. May 14, 2009).

In October 2005, while the state litigation was pending, Bourne sued the Town, its selectmen, and one of its residents in federal court (the "2005 federal litigation").  Bourne claimed that the defendants had interfered with maintenance of access to his property, prevented installation of electric service, and improperly denied lot subdivision and building permit requests.  Through two separate orders issued in June 2007 and May 2010, the court granted summary judgment in favor of the defendants on all claims.

Lastly, in February 2008, Bourne filed a quiet title suit in the Carroll County Superior Court, alleging that the quitclaim deed that created the Kelsey Easement was invalid because it did not contain a properly notarized signature of the grantee and was not properly accepted by the Town (the "2008 Easement litigation").  It is unclear from the pleadings whether this disagreement has been resolved.

Bourne first made a demand on Stewart Title to defend his title in July 2003.  In a series of letters between August 2003 and March 2004, Stewart Title refused to honor the demand, citing various exceptions and exclusions in the owner policy that prevented the disputes from qualifying as covered risks. On March 23, 2004, Stewart Title sent its fourth and final denial letter to Bourne and his two attorneys.  D.'s Ex. V, Doc. No. 146-24.  The letter denied coverage for various alleged title defects, including those that were at issue in the 2003 Easement litigation and the 2003 Road litigation.  Id.  It specifically stated, "your claim is hereby denied." Id.  Bourne maintains that he continued to make demands under the policy for each property dispute that arose after March 2004.  He states that Stewart Title continually refused to litigate the alleged defects, but neither party has presented additional evidence that Stewart Title in fact refused to represent Bourne's interests in any of the other cases.

Bourne claims that he incurred substantial legal fees and costs in presenting his various claims and that he defaulted on his mortgage because he used funds to pay legal fees and costs that he otherwise would have used to pay his mortgage.  Acting

pro se, Bourne filed this action in August 2009, alleging
various statutory and common law violations against Stewart
Title and the Bank.  In February 2011, I granted the Bank's
motion for judgment on the pleadings in its entirety and granted
Stewart Title's motion to dismiss in part.  I held that Bourne
had inadequately pleaded each of the claims in his complaint,
with the exception of his breach of contract claim against
Stewart Title.  Bourne and Stewart Title have now filed cross-
motions for summary judgment on the remaining claim.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when the record reveals "no
genuine dispute as to any material fact and that the movant is
entitled to judgment as a matter of law." Fed. R. Civ. P.
56(a).  The evidence submitted in support of the motion must be
considered in the light most favorable to the nonmoving party,
drawing all reasonable inferences in its favor.  See Navarro v.
Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

A party seeking summary judgment must first identify the
absence of any genuine issue of material fact.  Celotex Corp. v.
Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to

6

the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

In reviewing a pro se motion, this Court is obliged to construe the pleading liberally in favor of the pro se party. See Ayala Serrano v. Lebron Gonzales, 909 F.2d 8, 15 (1st Cir. 1990) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  That review ensures that pro se pleadings are given fair and meaningful consideration.  See Eveland v. Dir. of C.I.A., 843 F.2d 46, 49 (1st Cir. 1988).

### III.  ANALYSIS

Stewart Title contends that it is entitled to summary judgment on Bourne's breach of contract claims because the title policy excludes or excepts coverage for the matters underlying each of Bourne's claims.  It also argues that all of Bourne's claims, except his claim for coverage with respect to the 2008 Easement litigation, are barred by the three-year statute of

limitations that governs contract claims.  I begin by explaining
how the statute of limitations applies in this case.

**A.   <u>Statute of Limitations</u>**

Bourne's breach of contract claims arise out of Stewart
Title's refusal to defend his title in the 2003 Easement
litigation, the 2003 Road litigation, the 2005 Road litigation,
the 2005 federal litigation, and the 2008 Easement litigation.[3]
As I explain below, claims related to the 2003 Easement
litigation and the 2003 Road litigation are barred by the
statute of limitations.  Stewart Title, however, has failed to
establish as a matter of law that Bourne's remaining claims are
untimely.

Under New Hampshire law, a breach of contract claim must
"be brought [] within 3 years of the act or omission complained
of" or, under the discovery rule exception, "within 3 years of
the time the plaintiff discovers, or in the exercise of

---

[3] Although Bourne also contends that he is entitled to
indemnification, the facts do not support an indemnification
claim.  The claimed losses he cites are fees he incurred in
defending his title and losses he suffered as a result of having
to defend title on his own.  He does not allege that Stewart
Title is obliged to cover any liability that he owes to a third
party.  Thus, he does not present a viable claim for
indemnification.  See Wood v. Greaves, 152 N.H. 228, 232 (2005)
(explaining that the duty to indemnify covers losses that arise
because of the insured's obligations to a third party).

reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of." N.H. Rev. Stat. Ann. § 508:4, I; see Black Bear Lodge v. Trillium Corp., 136 N.H. 635, 637 (1993) (applying § 508:4 to contract claims).  In a contract action, the relevant "act or omission" is a party's alleged breach; thus, the statute of limitations begins to run when the alleged breach occurs, or when the plaintiff knew or reasonably should have known that a breach occurred.  See, e.g., A & B Lumber Co., LLC v. Vrusho, 151 N.H. 754, 756 (2005); Coyle v. Battles, 147 N.H. 98, 100 (2001); Bronstein v. GZA GeoEnvironmental, Inc., 140 N.H. 253, 255 (1995).

Stewart Title is correct that Bourne's breach of contract claims regarding the 2003 Easement litigation and the 2003 Road litigation are barred by the statute of limitations.  For those claims, the three-year limitations period began to run no later than March 24, 2004, when Bourne received Stewart Title's fourth and final denial letter.  See D.'s Ex. V, Doc. No. 146-24 (the date of receipt noted on the letter).  The letter placed Bourne on notice that Stewart Title was refusing to honor his claims for coverage of those lawsuits.  See id.  Bourne nevertheless

waited until August 2009, more than two-and-a-half years after
the statute of limitations expired, before he commenced the
current action.  As a result, his claims with respect to 2003
Easement litigation and the 2003 Road litigation are untimely.

Stewart Title is mistaken, however, in claiming that the
2004 denial letter also triggered the start of the limitations
period for the 2005 Road litigation and the 2005 federal
litigation.  Although the letter denied coverage for Bourne's
2003 Road litigation, the matter at issue in the 2005 Road
litigation – the Town's power to lay out the Road – is distinct
from the claims addressed in the letter and, in any event, the
letter predates the attempted layout of the Road by
approximately eight months.  Therefore, the letter did not place
Bourne on notice that the title company had rejected his claim
for coverage with respect to the 2005 Road litigation.

Similarly, the March 2004 denial letter did not disclaim
coverage for the 2005 federal litigation.  Although the letter
does indicate that Stewart Title had considered Bourne's dispute
with the Town in 2002 and 2003 regarding the issuance of a
building permit, it contains no reference to the Town's
revocation of that permit in February 2004 or the denial of lot

10

subdivision permits, both of which Bourne challenged in the 2005 federal litigation.  The other events underlying the 2005 federal litigation, including interference with road repair and installation of electrical poles, occurred after Stewart Title issued its final denial letter.

Because Stewart Title cites the March 2004 denial letter as the sole basis for triggering the statute of limitations, it has not established that Bourne was on notice that Stewart Title had rejected his claims for coverage with respect to either the 2005 Road litigation or the 2005 federal litigation.  See State v. Lake Winnipesaukee Resort, LLC, 159 N.H. 42, 45 (2009) ("The statute of limitations is an affirmative defense and the respondents bear the burden of proving that it applies.").  Therefore, Bourne's breach of contract claims related to those lawsuits are not necessarily barred by the statute of limitations.

Bourne seeks to save his claims concerning the 2003 Easement litigation and the 2003 Road litigation from the statute of limitations by claiming indeterminacy of damages, fraudulent concealment, and equitable tolling.  None of these

arguments shield him from Stewart Title's request for summary judgment.

He first contends that the statute was tolled until final resolution of the various litigations that Stewart Title refused to defend, because he could not determine the full extent of damages until the state court determined the rights of each party.  The New Hampshire Supreme Court has refused to extend the discovery rule to allow for the tolling of the statute of limitations until an insured's damages are fully ascertainable. Wood v. Greaves, 152 N.H. 228, 232-33 (2005); see Beane v. Dana S. Beane & Co., P.C., 160 N.H. 708, 713 (2010) ("[The discovery] rule 'is not intended to toll the statute of limitations until the full extent of the plaintiff's injury has manifested itself.'" (quoting Furbush v. McKittrick, 149 N.H. 426, 431 (2003))).

Here, Bourne informed Stewart Title in July 2003 that he had already incurred "thousands of dollars in legal fees and months of investigating and researching on [his] own time" as a result of the various disputes concerning his property.  D.'s Ex. O, Doc. No. 146-17, at 2.  Therefore, by the time Stewart Title rejected his claim in March 2004, Bourne had incurred

sufficient damages to place him on notice that Stewart Title's alleged breach resulted in an injury.  The fact that he did not know the full extent of damages until the state court ruled on the merits of the actions is inapposite.

I am also unpersuaded by Bourne's attempt to invoke the fraudulent concealment exception to toll the statute of limitations.  "[T]he fraudulent concealment rule states that when facts essential to the cause of action are fraudulently concealed, the statute of limitations is tolled until the plaintiff has discovered such facts or could have done so in the exercise of reasonable diligence." Beane, 160 N.H. at 714 (quoting Bricker v. Putnam, 128 N.H. 162, 165 (1986)).  To support this claim, Bourne contends that Stewart Title concealed certain internal communications from its headquarters relevant to his claim.  He does not explain how that alleged concealment prevented him from discovering Stewart Title's alleged breach, nor does he deny that he knew of Stewart Title's denial of his claim no later than March 2004, when it sent the final denial letter.  The fact that Stewart Title may have concealed internal communications is simply not relevant to whether Bourne knew it had breached the duty to defend.  Fraudulent concealment,

13

therefore, is not a basis for tolling the statute of limitations.

Lastly, Bourne argues that the statute must be tolled because the Town fraudulently concealed certain material facts regarding his property that he only discovered during the state trial on the merits in March 2007.  He does not contend that Stewart Title had any role in the concealment.  Therefore, fraudulent concealment does not apply.  See Portsmouth Country Club v. Town of Greenland, 152 N.H. 617, 624 (2005) ("The doctrine of fraudulent concealment is an equitable ground to justify the tolling of the statute of limitations based on the wrongful conduct of the defendant." (quoting Conrad v. Hazen, 140 N.H. 249, 253 (1995))).

Alternatively, Bourne may be relying upon the Town's acts of concealment as a basis for invoking the doctrine of equitable tolling.  "[T]he doctrine of equitable tolling is applicable only where the prospective plaintiff did not have, and could not have had with due diligence, the information essential to bringing suit.  A party attempting to invoke that doctrine will be held to a duty of reasonable inquiry." Id. (quoting Protective Life Ins. Co. v. Sullivan, 425 Mass. 615, 631

(1997)).  Bourne contends that he discovered in March 2007 that

a town official had forged maps used by the Town to support the

claim that Solomon Harmon Road was a Class VI road by

prescription, a matter he litigated in the 2003 Road litigation.

This alleged concealment is insufficient to invoke equitable

tolling against Stewart Title.  Regardless of the merits of his

suit against the Town, in March 2004, Stewart Title denied

Bourne's claim for coverage regarding the 2003 Road litigation,

citing an exclusion provision of the policy.  The Town's alleged

forgery did not implicate a new ground for coverage under the

policy.  Although the concealed information allowed Bourne to

challenge the Town's actions on a new ground, it does not

implicate "information essential to bringing suit" against

Stewart Title.[4]  See id.  The statute of limitations, therefore,

---

[4] Bourne also cites two additional instances where the Town
allegedly concealed evidence as grounds for his equitable
tolling claim.  First, the Town allegedly concealed evidence
necessary for Bourne to challenge the validity of the Kelsey
easement.  Second, the town officials allegedly concealed the
"fabricated circumstances" they relied upon to revoke Bourne's
building permit and deny his subdivision requests, which, along
with other interferences with his property, led him to file suit
in federal court in October 2005.  Neither alleged concealment
is relevant for the purpose of equitable tolling because
Bourne's breach of contract claims arising out of those two
lawsuits are not barred by the statute of limitations.

was not tolled with respect to the two untimely claims – the
2003 Easement litigation and the 2003 Road litigation.

**B.    Remaining Claims**

Stewart Title also argues that it is entitled to summary
judgment with respect to the 2005 federal litigation, the 2005
Road litigation, and the 2008 Easement litigation because each
of these claims is expressly excepted or excluded from coverage.
I address Bourne's arguments with respect to each of these
claims in turn.

### 1.    The 2005 Federal Litigation

In October 2005, Bourne sued the Town, its selectmen, and
one of its residents, alleging wrongful denial of subdivision
requests, improper revocation of a building permit, interference
with the installation of electrical poles, and interference with
maintenance of access to his property.  Bourne contends that
Stewart Title breached its duty to defend his title by refusing
to litigate the lawsuit on his behalf.  Stewart Title is
entitled to summary judgment on the claim because Bourne has not
demonstrated that the matters he litigated in the 2005 federal
litigation involved risks covered under the policy.

16

Bourne cites three separate provisions under the title policy as grounds for coverage.  He first argues that "Covered Risk 14" required Stewart Title to defend the lawsuit.  That provision states that the insured is covered if "[b]ecause of an existing violation of a subdivision law or regulation affecting the land: (a) [y]ou are unable to obtain a building permit." D.'s Ex. D, Doc. No. 146-6, at 4.  Bourne has not demonstrated that his inability to obtain the building permit at issue was due to "an existing violation a subdivision law or regulation affecting the land."  Instead, he contends the revocation was due to collusion of the town officials against him.  Therefore, the provision does not apply.

Bourne next invokes "Covered Risk 11," which provides coverage if "[y]ou do not have both actual vehicular and pedestrian access to and from the land, based upon a legal right."  Id. at 3.  Although he maintains that the Town prevented him from repairing Solomon Harmon Road, he has not submitted admissible evidence that the Town's interference with the road repair in fact deprived him of "actual vehicular and pedestrian access to and from the land."  As such, he has not

established that Stewart Title breached "Covered Risk 11" in failing to litigate the suit.

Lastly, with respect to the Town's interference with the installation of electrical poles, Bourne contends that the matter implicated "Covered Risk 12," which provides coverage if "[y]ou are forced to correct or remove an existing violation of any covenant, condition or restriction affecting the [l]and, even if the covenant, condition or restriction is excepted in Schedule B." Id. He has not provided any evidence or explained how the Town's interference with the installation of utility service concerned "an existing violation" of a condition impacting his land. Moreover, "Exclusion 4(d)" of the title policy excludes coverage for risks "that first occur after the Policy Date." D.'s Ex. D, Doc. No. 146-6, at 5. Bourne has not demonstrated that the Town prevented him from installing utility service as of September 2002, the date of the policy. Indeed, Bourne first sought to erect electrical poles in November 2003, more than a year after he obtained the policy. Bourne has, therefore, failed to establish that Stewart Title breach the contract by refusing to prosecute the 2005 federal litigation on his behalf.

In addition to Bourne's failure to demonstrate coverage under the policy, Stewart Title is entitled to summary judgment on this breach of contract claim because it has established that "Exclusion 1" precludes coverage for all the claims litigated in the 2005 federal litigation.  That provision excludes coverage for matters arising out of the government's use of police power, including the enforcement of "ordinances, laws and regulations concerning: (a) building; (b) zoning; (c) land use; (d) improvements on the land; (e) land division . . . ."  D.'s Ex. D, Doc. No. 146-6, at 5.  Even if wrongful, the Town's alleged denials of the building permit, subdivision requests, road repair, and installation of utility service clearly fall within the ambit of the exclusion because they are regulations of building, land division, and improvements on the land.  Thus, Stewart Title did not breach the title policy by denying Bourne's claim for coverage of the 2008 federal litigation.

**2.   The 2005 Road Litigation**

Bourne also contends that Stewart Title breached the title policy by refusing to take up his challenge to the Town's attempt to lay out Solomon Harmon Road.  Stewart Title is

entitled to summary judgment on the claim because Bourne has failed to demonstrate a breach.

"Exclusion 4(d)" of the title policy excludes coverage for risks "that first occur after the Policy Date."  D.'s Ex. D, Doc. No. 146-6, at 5.  Bourne purchased the policy in September 2002, more than two years before the Town attempted to lay out Solomon Harmon Road as a Class VI highway.  Although "Exclusion 4(d)" does not limit coverage for certain enumerated covered risks, none apply to Bourne's claim at issue.

Moreover, the Town's attempt to lay out the Road constituted a governmental condemnation, a risk excluded from the policy under "Exclusion 3."  See D.'s Ex. D, Doc. No. 146-6, at 5; N.H. Rev. Stat. Ann. § 231:1-23.  Bourne's argument that the layout attempt was not a condemnation because the Town also contended that the Road was already a Class VI highway does not change the nature of the process the Town used in seeking to lay out the Road.  The petition to lay out the Road clearly invoked Section 231:8, which permits selectmen of a town to lay out new Class VI highways.  D.'s Ex. W, Doc. No. 146-25; see N.H. Rev. Stat. Ann. § 231:8.  Therefore, because the attempted layout constituted a risk excluded under the policy, Stewart Title did

not breach its contract with Bourne when it refused to honor his claim for coverage of the 2005 Road litigation.

### 3.    The 2008 Easement Litigation

Bourne's last claim is that Stewart Title breached the duty to defend when it refused to prosecute the 2008 Easement litigation, wherein he challenged the validity of the Kelsey Easement.  Stewart Title is entitled to summary judgment on the claim because it has established that coverage is specifically excepted from the title policy.

"The insurer asserting an exclusion of coverage . . . bears the burden of proving that the exclusion applies." Progressive N. Ins. Co. v. Concord Gen. Mut. Ins. Co., 151 N.H. 649, 653 (2005).  Stewart Title cites to "Special Exception 3" of the title policy as the relevant exclusion.  That exception eliminates from coverage "[r]ights, rights of way and easements in instruments recorded in the Carroll County Registry of Deeds in Book 734, Page 078." D.'s Ex. D, Doc. No. 146-6, at 10.  The Carroll County Registry of Deeds, Book 734, Page 78, contains the quitclaim deed that conveyed the Kelsey Easement to the Town.  D.'s Ex. B, Doc. No. 146-4.  Therefore, the unambiguous

language of the policy excludes from coverage litigation regarding the validity of the Kelsey Easement.

Bourne's argument that Special Exception 3 does not preclude coverage because "Covered Risk 27" imposes a duty to defend is unpersuasive.  That provision provides coverage when "[a] document upon which [y]our [t]itle is based is invalid because it was not properly signed, sealed, acknowledged, delivered or recorded."  D.'s Ex. D, Doc. No. 146-6, at 4. Bourne contends that the provision applies to his quiet title suit to invalidate the Kelsey Easement because the deed conveying the Easement was not properly acknowledged or legally accepted.  Bourne, however, fails to recognize a longstanding rule of contract interpretation: "Where general and specific clauses conflict, the specific clause governs the meaning of the contract."  11 Richard A. Lord, Williston on Contracts § 32:10 (9th ed. 1999).  Therefore, even if "Covered Risk 27" could conceivably cover Bourne's attempt to invalidate the Easement, Special Exception 3 is the more specific clause that addresses the Kelsey Easement.  The specific clause precludes coverage. Therefore, Stewart Title did not breach its duty to defend

Bourne's title by denying coverage for the 2008 Easement litigation.

### IV.  CONCLUSION

For the reasons stated above, I deny Bourne's motion for summary judgment (Doc. No. 144) and grant Stewart Title's motion for summary judgment (Doc. No. 146).  The clerk shall enter judgment accordingly and close the case.

SO ORDERED.


/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

December 7, 2011

cc:  Samuel Bourne, pro se
     Edmond J. Ford, Esq.
     Richard K. McPartlin, Esq.